OSCN Found Document:CATES v. INTEGRIS HEALTH, INC.

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 







 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 CATES v. INTEGRIS HEALTH, INC.
2017 OK 54
Case Number: 114314
Decided: 06/19/2017
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2017 OK 54, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

ELIZABETH CATES, Individually and on behalf of others similarly situated, Plaintiff/Appellant,
v.
INTEGRIS HEALTH, INC., an Oklahoma Corporation, Defendant/Appellee.

ON APPEAL FROM THE DISTRICT COURT OF OKLAHOMA COUNTY,
THE HONORABLE JUDGE ROGER STUART, PRESIDING.

¶0 The plaintiff/appellee, Elizabeth Cates, filed on her behalf and a putative class asserting claims against the defendant/appellee, INTEGRIS Health, Inc., for breach of contract, violation of the Oklahoma Consumer Protection Act, deceit, specific performance, and punitive damages. INTEGRIS successfully moved to dismiss the claims based on the ground that they are all preempted by the Employee Retirement Income Security Act, 29 U.S.C., §§ 1001 et seq. Cates appealed. This Court retained the matter for disposition.

REVERSED AND REMANDED.

Terry W. West, Bradley C. West, Gregg W. Luther, J. Shawn Spencer, THE WEST LAW FIRM, Shawnee, Oklahoma; Attorneys for Plaintiff/Appellant.

Kevin D. Gordon, Alison M. Howard, CROWE & DUNLEVY PC, Oklahoma City, Oklahoma; Attorneys for Defendant/Appellee.

WINCHESTER, J.

¶1 Elizabeth Cates, plaintiff/appellant, filed a lawsuit, individually and on behalf of others similarly situated, against INTEGRIS Health, Inc., defendant/appellee. Her claims include breach of contract, violation of the Oklahoma Consumer Protection Act, deceit, specific performance, and punitive damages.

¶2 INTEGRIS answered that the case fell within the Employee Retirement Income Security Act, 29 U.S.C., §§ 1001 et seq. (ERISA), which completely preempts state claims. The case was removed to the federal court from the Oklahoma District Court. After Cates filed a motion to remand to Oklahoma District Court, Judge Joe Heaton of the United States District Court for the Western District, concluded that the claims made by Cates were "completely preempted, creating subject matter jurisdiction in this court." Judge Heaton denied the motion to remand. Cates v. INTEGRIS Health, Inc., 2012 WL 5456093 (W. D. Okla. 2012) (unpublished).

¶3 Before the Western District decided allegations in the Cates case, the Tenth Circuit handed down Salzer v. SSM Health Care of Oklahoma Inc., 762 F.3d 1130 (10th Cir. 2014). That court decided a case factually similar to the case now before this Court. Both the issues and the facts in Salzer are nearly identical to those in this Cates case. The holding in Salzer concluded that most of Salzer's claims were not preempted, but one claim supported federal question jurisdiction under ERISA and therefore the federal court could assert jurisdiction over all of the claims, including any alleged state-law claims that arose from the same core of operative facts. Salzer, 762 F.3d at 1137.

¶4 Richard Salzer's health insurance company had an existing contract with SSM Health Care of Oklahoma, Inc. That contract required SSM to submit covered medical charges to Salzer's insurance company and accept discounted payment from the insurer. Salzer, 762 F.3d at 1133. Elizabeth Cates's health insurance company had an existing contract with INTEGRIS Health, Inc. That contract required INTEGRIS to accept a discounted payment and bill the health insurance company for covered charges. These reported facts are the same in both the Salzer and Cates cases.

¶5 In Salzer the 10th Circuit included criticism of the Cates case in its opinion based on that court's construction of Aetna Health Inc. v. Davila, 542 200, 124 s.Ct. 2488, 159 L.Ed.2d 312 (2004).

"We acknowledge that another decision from the Western District of Oklahoma concluded that an ERISA plan beneficiary's suit against a health care provider for failing to submit claims according to the terms of a provider agreement was preempted because her "status as a third-party beneficiary is dependent on her participation in the ERISA Plan in the first place." Cates v. Integris Health, Inc., No. CIV-12-0763-HE, 2012 WL 5456093, at *3 (W.D.Okla. Nov. 7, 2012) (unpublished). But we find this connection too attenuated to meet the Davila standard. See David P. Coldesina, 407 F.3d at 1138 (ERISA preemption does not apply if plan is merely "part of the factual backdrop of th[e] case")."

Salzer, 762 F.3d at 1137.

¶6 Like Salzer, Judge Heaton cited two elements from Davila, in concluding the Cates case would not be remanded to the Oklahoma District Court. The first element was whether Cates, at some point, could have brought her claims under ERISA's civil enforcement provision. The court ruled that interpretation of the terms of the ERISA plan was required to determine whether Cates's service was entitled to a discounted rate under the hospital's contract. Therefore the claims fell within ERISA's civil enforcement scheme. The second element of Davila was whether there is "no other independent legal duty" implicated by INTEGRIS's actions. The court ruled that since plaintiff's status as a third-party beneficiary is dependent on her participation in the ERISA plan, Cates's status as a third-party beneficiary was not independent of ERISA. This ruling regarding the second element of Davila is what the Salzer court concluded as "too attenuated to meet the Davila standard."

¶7 Subsequently, Judge Heaton recused in the Cates case and the action was reassigned to Judge Stephen P. Friot. Judge Friot granted Cates's renewed motion to remand, based on the Tenth Circuit's Salzer case. Cates v. INTEGRIS Health, 2014 WL 12493272 (W.D. Okla.).

¶8 Judge Friot acknowledges the close similarity between the facts in the Salzer and Cates cases. Nevertheless, the court concludes, based on its reading of the Salzer case that the decision to retain or remand the ERISA case turns on the difference between the claims in the two cases. If the claims, including that of the in-network discount, "primarily hinge on the provider agreement," and not Cates's healthcare plan, then it is a type of claim that does not give rise to preemption jurisdiction. Cates, 2014 WL 12493272, *6 (W.D. Okla.). The healthcare plan can be examined to determine if coverage exists, but that reference to the agreement is not dispositive in deciding preemption. Cates, 2014 WL 12493272, *6 (W.D. Okla.).

¶9 Instead of the term "relates to" being the test of preemption, the current test, according to Salzer, is whether the healthcare plan is merely "part of the factual backdrop" of the case. Salzer, 762 F.3d at 1137. Accordingly, Judge Friot has ruled that a reference in the allegations to decide if a certain injury is covered and whether a discount is required in the healthcare plan, are both merely parts of the factual backdrop of an Oklahoma contract case, which is a state issue and not a federal issue. Although both cases seek enforcement of the discount on charges provided in the health insurance, the Tenth Circuit has drawn a distinction between a claim for tortious interference with a contract, Salzer, which is preempted, and a claim by the plaintiff as a third party beneficiary for the enforcement of a discount, Cates, which is not preempted.

¶10 Judge Friot's conclusion has decided a rule of federal law in the Cates case, which is now before this Court. That decision should continue to govern the same issues in subsequent stages in the same case. Arizona v. California, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983).] This is a subsequent stage of the same case.

¶11 We remand to the District Court of Oklahoma County. Based on Judge Friot's ruling, the court can then continue with Oklahoma remedies. We express no opinion on the class action issue.

REVERSED AND REMANDED.

Concur: Combs, C.J., Gurich, V.C.J., Winchester, Edmondson, Colbert and Wyrick, JJ.

Dissent: Watt, Reif, JJ. (By separate writing)

Not Participating: Kauger, J.

 

 

Reif, J., with whom Watt, J. joins, dissenting:

¶1 The controversy in the case at hand is a simple contract dispute between a patient and a hospital over the amount the hospital would charge the patient for services rendered to the patient. This controversy has nothing to do with whether the patient's medical need was covered by patient's ERISA plan.

¶2 Patient Elizabeth Cates signed a written contract, prepared by Hospital Integris Health, Inc., in which she agreed to be "responsible for the payment of all charges of the Hospital relating to services rendered to the patient that remain after any third party payment . . . unless the Hospital is prohibited by contract between third party and Hospital from billing Patient for these amounts." Notably absent from this provision is the amount Hospital would charge the third party payor or a patient who has no third party payor.

¶3 This omission is significant in that it creates vagueness and ambiguity concerning the amount the patient is agreeing to pay. In view of these circumstances, the question of how much the Hospital should be allowed to charge must be answered with reference to the reasonable expectation of the patient concerning the amount the patient was agreeing to pay. Patient Cates contends that her reasonable expectation was that she would be charged the amount that her ERISA plan would have been billed if her medical need had been covered. Language in the written contract drafted by Hospital lends support for such a reasonable expectation.

¶4 The language that "the patient . . . is responsible for all charges . . . that remain after any third party payment," clearly implies that there is some special amount third party payors are charged. In addition, Hospital's intent to be bound by the special amount is found in the language that the patient will pay the remainder "unless the Hospital is prohibited by contract between third party and Hospital from billing Patient for these amounts." Finally, the patient's blanket assignment of benefits reinforces a reasonable expectation that the Hospital is dealing with patient with reference to patient's insurance or health plan, including the amount Hospital intends to charge.

¶5 If the Hospital has one amount it charges for patients who have insurance or health plan coverage when that coverage applies, and another amount when such coverage does not apply, then the Hospital should disclose these different amounts at the time the patient signs the contract. Otherwise, a patient like Ms. Cates has no way of knowing what she has agreed to pay, and charges are left to the complete discretion of Hospital. In the absence of such disclosure, the vagueness and ambiguity in this contract concerning the amount Hospital can charge Ms. Cates, and others like her, should be resolved against Hospital and in favor of the patients.

¶6 In my opinion, this case should be remanded to the trial court with instructions to reinstate patients' breach of contract claim and for further proceedings unencumbered by the distraction of federal preemption.






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 None Found.